UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER NICHOLSON,
#462661,

    Petitioner,                                         Civil Action No. 18-CV-11665

vs.                                                HON. BERNARD A. FRIEDMAN

CATHERINE BAUMAN,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This matter is presently before the Court on petitioner's application for a writ of habeas corpus. Petitioner challenges his convictions for armed robbery, MICH. COMP. LAWS § 750.529, and conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.529, § 750.157a. Petitioner raises seven claims for relief. For the following reasons, the Court shall deny the petition, deny a certificate of appealability, and deny leave to proceed in forma pauperis on appeal.

**I.**     **Background**

The Michigan Court of Appeals has summarized the facts underlying petitioner's convictions as follows:

> Defendant's convictions are the result of a robbery by two men, one with a gun, of a gas station attended by Stephen Herrod. Evidence indicated that the robbers were wearing bandanas and that one was wearing a black hat. The day after the robbery, a jogger discovered two bandanas, a hat or ski mask, and a gun that looked like it had been broken. The discovery was made on a road a little over a mile from the robbery. The items were tested and DNA from one of the bandanas matched defendant's DNA profile that was in a database. Thereafter, defendant's apartment was searched. A distinctive shirt

or jersey was discovered that matched the shirt of one of the robbers.

*People v. Nicholson*, No. 333546, 2017 WL 3441514, at *1 (Mich. Ct. App. Aug. 10, 2017). Petitioner was convicted by a Washtenaw County Circuit Court jury and was sentenced to concurrent sentences of 18 to 30 years. *See id.*

Petitioner filed an appeal of right in the Michigan Court of Appeals. The court of appeals affirmed his convictions but remanded the case to correct an error in the presentence investigation report, which the court of appeals held did not affect the sentence. *See id.* at *9. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied. *See People v. Nicholson*, 908 N.W.2d 310 (Mich. 2017).

Petitioner then filed the instant habeas petition seeking relief on the following grounds:

> I. The trial court abused its discretion and denied [defendant appellant] due process and a fair trial by the admission of irrelevant and unduly prejudicial other acts evidence.
>
> II. The prosecution presented legally insufficient evidence that [defendant] committed the armed robbery, thereby denying my right to due process under the federal and Michigan Constitutions and his convictions should be vacated.
>
> III. [Defendant's] statement was obtained in violation of . . . the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.
>
> IV. The trial court erred in giving the jury a misleading instruction during deliberations which confused the theory of guilt which added a different set of circumstances to the theory of guilt in which [defendant] was never able to present a defense.
>
> V. The trial court erred in scoring [defendant's] offense variable 1 at 15. The trial court also erred in scoring my offense variable 2 at 5 and not 1.
>
> VI. Trial counsel was ineffective doing [sic] the investigational and

preparatory stage of the process leading up to trial and doing part of
the trial (parts [which] impacted the outcome of my trial).

VII. Defendant's DNA buccal swab[1] was obtained illegally, contrary
to *Wong Sun v. United States*, 371 U.S. 471 [(1963)].

Pet. at 6, 8-9, 11-14. Respondent has filed the relevant state court record and an answer in opposition.

## II. Legal Standards

A habeas petition pursuant to 28 U.S.C. § 2254 is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). To obtain relief, habeas petitioners who challenge

> a matter "adjudicated on the merits in State court" [must] show that the relevant state court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

---

[1] A buccal swab is the technical term for a "DNA sample [that is] taken by applying a cotton swab or filter paper . . . to the inside of [someone's] cheeks." *Maryland v. King*, 569 U.S. 435, 440 (2013). It is "part of a routine booking procedure for serious offenses." *Id*.

3

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, a state-court's factual determinations are presumed correct on federal habeas review, *see* 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Admission of Prior Act Evidence (Claim I)

Petitioner's first claim concerns the admission of prior act evidence. A police detective testified that, in 2003, he was assigned to a similar case involving a late night robbery by two people who were carrying guns and wearing bandanas. *See Nicholson*, 2017 WL 3441514, at *3. He further testified that petitioner pled guilty to that crime. *See id.* The Michigan Court of Appeals held that the evidence was properly admitted to show a common scheme or plan, and that it was not unfairly prejudicial. *See id.*

"There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The Supreme Court has discussed the permissible circumstances for introducing prior act evidence under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms, finding that admission of such testimony is more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *See Dowling v. United States*, 493 U.S. 342, 352 (1990). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of § 2254(d)(1). *See Bugh*, 329 F.3d at 513.

Additionally, petitioner fails to show that the admission of this evidence was so

4

egregious that he was denied a fair trial. An evidentiary ruling may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling*, 493 U.S. at 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). The Supreme Court has "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle v. McGuire*, 502 U.S. 62, 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

In the present case, the trial court acted well within the bounds of due process when it admitted the prior act evidence. The transcripts show that the court considered the evidence's relevance, purpose, and the potential for prejudice. This Court has no basis on which to conclude that the evidence was admitted in violation of petitioner's due process rights. Moreover, to the extent that the court erred in admitting this evidence, the error was harmless because petitioner has not shown that it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). The Court will therefore deny this claim for relief.

### B. Sufficiency of the Evidence (Claim II)

Petitioner next argues that the evidence introduced at trial was insufficient to support his convictions because he was not identified as one of the robbers. On habeas review, a sufficiency-of-the-evidence inquiry involves "two layers of deference[:] one to the jury verdict, and one to the state appellate court." *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, "the elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 520 N.W.2d 672, 673 (Mich. Ct. App. 1994). A conspiracy in Michigan "requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v. Cotton*, 478 N.W.2d 681, 688 (Mich. Ct. App. 1991). "[D]irect proof of agreement is not required, nor is proof of a formal agreement necessary. It is sufficient that the circumstances, acts, and conduct of the parties establish an agreement." *Id*.

The Michigan Court of Appeals, applying the standard of review set forth in *Jackson*, denied petitioner's sufficiency-of-the-evidence claim. The court held that

> there was direct and circumstantial evidence, when viewed in the light most favorable to the prosecutor, that gave rise to a reasonable inference that defendant was a perpetrator. Herrod identified the perpetrators as two African-American men wearing black clothing, one of whom had a handgun and was wearing a black hat, black and white bandana, black clothes, and white gloves, with the second man wearing a black hooded sweatshirt. Herrod said that the robbers left and went behind the store. A police officer stated that witnesses told him that the robbers ran towards a residential area on Nixon Road behind the gas station. A jogger running on Nixon Road after the robbery and 1.2 miles away found a black and white bandana, pieces of a crushed gun, a black hat or ski mask, and a black bandana with white pictures. He had not seen the items during his run on the same path the previous day. Defendant's DNA was found on one of the bandanas. Moreover, [Ann Arbor Police Detective] Monroe found a dark-colored shirt with a distinctive black and white wave pattern

6

> on the shoulder and a blue emblem on the front and sleeve in defendant's drawer; it matched the shirt of one of the robbers in the surveillance video. From the evidence, a juror could make a reasonable inference that defendant was one of the robbers. Moreover, this robbery was consistent with the robbery scheme defendant had employed in the past, further implicating him. Thus, the evidence was sufficient to support defendant's conviction beyond a reasonable doubt.

*Nicholson*, 2017 WL 3441514, at *4.

Petitioner's argument essentially asks the Court to reweigh the evidence and to come to a different conclusion than that reached by the jury. This is not the Court's role on habeas review. The Court does not "rely simply upon [its] own personal conceptions of what evidentiary showings would be sufficient to convince [the Court] of the petitioner's guilt." *Brown*, 567 F.3d at 205. Instead, the Court asks whether the Michigan Court of Appeals "was unreasonable in *its* conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based upon the evidence presented at trial." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Further, "circumstantial evidence may support a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt." *Hill v. Mitchell*, 842 F.3d 910, 934 (6th Cir. 2016) (internal quotation marks omitted). *See also Gipson v. Sheldon*, 659 F. App'x 871, 881 (6th Cir. 2016) ("[C]ircumstantial evidence . . . is intrinsically no different from testimonial evidence and . . . is sufficient as long as the jury is convinced beyond a reasonable doubt") (internal quotation marks omitted).

"A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). The evidence against

petitioner, though circumstantial, was sufficient for a reasonable trier of fact to find the essential elements of petitioner's crime proven beyond a reasonable doubt. Further, it was not unreasonable for the state court to conclude that the evidence, viewed in the light most favorable to the prosecutor, was legally sufficient to support petitioner's conviction. Accordingly, the Court shall deny habeas relief as to this claim.

### C. Fourth, Fifth and Sixth Amendment Claims (Claims III & VII)

In his third claim, petitioner alleges that he is entitled to habeas relief because the police obtained his consent to search his apartment in violation of his constitutional rights. *See* Pet. at 42. Specifically, he claims that his rights under the Fourth, Fifth and Sixth Amendments were violated because the police obtained his consent after he had invoked his right to counsel and the evidence seized was admitted at trial. *See id*. at 43.

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. In *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), the Supreme Court held that the prohibition against compelled self-incrimination requires a custodial interrogation to be preceded by advice that the putative defendant has the right to an attorney and the right to remain silent. The Court further held that if the putative defendant invokes his right to counsel, "the interrogation must cease until an attorney is present." *Id*. at 474. In *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), the Supreme Court reaffirmed the rule established in *Miranda* that, when a suspect has invoked the right to have counsel present during custodial interrogation, the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

The Michigan Court of Appeals held that petitioner's Fifth Amendment rights were not violated when the police requested his consent to search his apartment because the request was not an interrogation and petitioner's consent, by itself, was not evidence tending to incriminate him. *See Nicholson*, 2017 WL 3441514, at *2.

The state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent. A request to consent after the invocation of the right to counsel does not violate the Fifth Amendment because "[t]he protections of [that] amendment only apply to incriminating evidence of a testimonial or communicative nature." *United States v. Cooney*, 26 F. App'x 513, 523 (2002). Thus, petitioner fails to allege a violation of his Fifth Amendment rights.

The Michigan Court of Appeals also denied petitioner's Sixth Amendment claim, stating that

> [a] defendant's Sixth Amendment right to counsel arises "only after adversarial legal proceedings have been initiated against a defendant by way of indictment, information, formal charge, preliminary hearing, or arraignment. [*People v. Marsack*, 231 Mich. App. 364, 377–378 (1998)]. Here, defendant had not been formally charged at the time of his questioning; thus, the Sixth Amendment right to counsel had not yet come into play. Moreover, in *Marsack*, *id.* at 377, the Court noted that the Sixth Amendment right to counsel did not attach to requests for a search because such a request is not a critical stage in the proceedings, and "a search does not generate evidence, but merely reveals evidence already in existence and certain to become available to the government in due course."

*Nicholson*, 2017 WL 3441514, at *2.

This decision is neither contrary to nor an unreasonable application of federal law. Because adversary criminal proceedings had not yet been initiated, petitioner's Sixth Amendment right to counsel had not attached at the time he was questioned by police. *See McNeil v. Wisconsin*,

9

501 U.S. 171, 175 (1991) (holding that Sixth Amendment right to counsel does not attach until "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment") (internal quotation marks omitted). Petitioner's Sixth Amendment claim is thus without merit.

Finally, Petitioner argues that the DNA evidence obtained from a buccal swab should have been excluded because it was obtained pursuant to a defective search warrant. *See* Pet. at 56-58. Petitioner contends that the search warrant was defective because it was based upon evidence seized after petitioner gave consent to search his apartment. *See id.* at 57-58. The Michigan Court of Appeals denied this claim because petitioner failed to show that the consent to search was unconstitutionally obtained. *See Nicholson*, 2017 WL 3441514 at *2.

When a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). Petitioner availed himself of this process and the Michigan Court of Appeals considered and rejected his claim on the merits. Petitioner makes no allegations that the presentation of his Fourth Amendment claim was frustrated by a failure of the state court procedures. Accordingly, habeas relief is denied as to claims III and VII.

### D. Aiding and Abetting Jury Instruction (Claim IV)

Petitioner next argues that he was denied his right to a fair trial by the trial court's response to a juror question during deliberations. The jury asked whether petitioner needed "to be

the person possessing the weapon to be found guilty of armed robbery; th[at] is, holding the weapon?" Docket entry 11-14, PageID.459. The court responded, in writing, with a portion of the standard jury instruction for aiding and abetting: "Anyone who intentionally assists someone in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime." *Id.* at PageID.460. Petitioner argues that the evidence did not support this instruction and that he did not have the opportunity to present a defense to aiding and abetting.

To obtain habeas relief based on an allegedly improper jury instruction, a petitioner must show that the instructions, "taken as a whole, [were] so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (internal quotation marks omitted). The Michigan Court of Appeals held that the evidence presented at trial supported the aiding and abetting instruction. *See Nicholson*, 2017 WL 3441514, at *5. The court also held that the instruction did not deprive petitioner of his constitutional right to present a complete defense. *See id.* The prosecution presented evidence that petitioner was one of two participants in the robbery, and petitioner presented a defense that he had no connection to the robbery and did not aid and abet the crime. *See id.*

Petitioner fails to show that the state court's denial of his jury instruction claim was contrary to, or an unreasonable application of, Supreme Court precedent. The instructions, taken as a whole, did not render the trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 ("It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record") (internal quotation marks and citation omitted). Petitioner was aware of the prosecution's theory of the case throughout trial and defended against that theory. Nothing in the court's instruction hampered his ability to do so. Habeas relief

11

is therefore not warranted on this claim.

E. **Scoring of Offense Variables (Claim V)**

Petitioner next challenges the trial court's scoring of Offense Variables 1 and 2. He argues that both variables were incorrectly scored based upon a determination that a real gun was used in the robbery, when the evidence showed that a real gun was not used. Pet. at 51-52.

The Michigan Court of Appeals held that both variables were correctly scored because testimony from the jogger, Detective Monroe, and Herrod identified the item as a gun. *See Nicholson*, 2017 WL 3441514, at *8-9. "A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). And "federal habeas corpus relief does not lie for errors of state law." *Id.* (quoting *Estelle*, 502 U.S. at 67). Consequently, petitioner's claim that the state trial court erred when it scored Offense Variables 1 and 2 is not cognizable on federal habeas review.

To the extent that petitioner maintains that this claim rises to the level of a federal constitutional violation because he was sentenced on the basis of inaccurate information, this claim also fails. A sentence based on "extensively and materially false" information, which the defendant had no opportunity to correct, may constitute a federal due process violation. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). But petitioner has not established that he was sentenced on the basis of false information. He challenged the scoring of these offense variables at sentencing and the trial court rejected his arguments based upon the evidence presented at trial. *See* docket entry 11-15, PageID.478-79. Under these circumstances, petitioner cannot establish that he was sentenced based on extensively and materially false information in violation of his right to due process.

12

### F. Ineffective Assistance of Counsel (Claim VI)

Petitioner next argues that habeas relief should be granted because defense counsel was ineffective. Petitioner contends that counsel failed to present evidence that petitioner's physical appearance differed from that of the gunman, as depicted on the surveillance video. *See* Pet. at 55. Petitioner also argues that counsel should have objected to Detective Monroe's testimony that the "orange piece" recovered near the bandanas and ski mask was an internal component of a firearm, and to the characterization of the ski mask as a hat. *See id*. at 53-54.

To raise a claim of ineffective assistance of counsel, petitioner must show that (1) the attorney's performance was deficient and (2) the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, regarding petitioner's claim that counsel failed to explore differences between

13

petitioner's appearance and that of the suspect, the Michigan Court of Appeals held that counsel adequately explored these apparent discrepancies:

> [T]rial counsel was responsible for eliciting evidence that the only witness to the crime did not believe that defendant was the gunman, and also suggested that the evidence was not sufficient to identify defendant as a part of the crime, pointing to an apparent discrepancy in the physical characteristics given by Herrod and defendant's actual appearance. Thus, defendant has not demonstrated that his trial counsel failed to properly prepare for trial.
>
> Defendant also argues that counsel should have attempted to show the jury his lack of tattoos because the surveillance video showed tattoos on one of the robbers. Counsel elicited from Monroe that he thought defendant had tattoos on his arms but he also said that he did not see any tattoos on the surveillance video. Moreover, Herrod testified that he did not see tattoos on the robbers' arms. Thus, if defendant did not have tattoos it would have been consistent with the testimony. To the extent the video or photos suggested that there were tattoos, defendant's trial counsel attempted to display defendant's arms for the jury, but the trial court did not allow it. That trial counsel was unsuccessful in [her] attempt does not mean that [s]he was ineffective.

*Nicholson*, 2017 WL 3441514, at *7.

The record shows that counsel cross-examined witnesses about the descriptions of the offenders and the videotape. Defense counsel highlighted inconsistencies and effectively emphasized that the victim testified during the preliminary examination that petitioner was not one of the perpetrators. This record supports the court of appeals' holding that defense counsel was not deficient in this regard.

Second, petitioner argues that counsel should have objected to Detective Monroe's testimony that the "orange piece" discovered by the jogger was part of the internal workings of a firearm and to the characterization of the ski mask as a hat. The Michigan Court of Appeals held that Detective Monroe's testimony was proper under state rules of evidence because it was based upon

14

his knowledge of firearms developed over his extensive career in law enforcement. *Id.* The court of appeals also held that counsel was not ineffective for failing to object to the testimony about the ski mask. The state court reasoned that

> it is not clear from the record what the best characterization of the [hat/mask] would have been. Herrod said that the gunman who robbed him was wearing a black hat, and the jogger said that he found a "black hat or black ski mask" among the items he located on the side of the road. One officer referred to the item as a black ski mask, whereas a forensic scientist stated that he tested a hat, and Monroe said it was a knit cap. In addition, and significantly, the item was admitted into evidence, giving the jury the opportunity to determine whether it was a hat or ski mask and which witness described it most accurately. Under the circumstances, defendant did not demonstrate that his trial counsel provided ineffective assistance.

*Nicholson*, 2017 WL 3441514, at *7.

The Michigan Court of Appeals' decision did not unreasonably apply, nor was it contrary to, the Supreme Court's holding in *Strickland*. Petitioner has not shown that Detective Monroe's testimony was improperly admitted and therefore cannot show that counsel was ineffective for failing to object. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel."). Neither was counsel ineffective for failing to object to witnesses characterizing the hat/mask differently because such testimony was not improper. The jury was free to believe or disbelieve the witnesses' testimony and, as the court of appeals noted, the jury could examine the hat/mask and make its own determination about its characteristics. Additionally, petitioner has failed to demonstrate that he was prejudiced by the witnesses' characterization of this evidence. Petitioner's ineffective assistance of counsel claim is therefore denied.

## IV. Conclusion

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has failed to make "a substantial showing of denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because no appeal could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

Dated: June 8, 2021
      Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 8, 2021.

Christopher Nicholson #462661
OAKS CORRECTIONAL FACILITY
1500 CABERFAE HIGHWAY
MANISTEE, MI 49660

s/Johnetta M. Curry-Williams
Case Manager